537 So.2d 1348 (1989)
Jane RILEY, Individually and Jane Riley as Guardian of the Estate of Stefan Nicholas Moreland, a Minor, and Jane Riley, as Administratrix of the Estate of Mark Stephen Moreland, Deceased
v.
Mittie MORELAND.
No. 59338.
Supreme Court of Mississippi.
January 4, 1989.
*1349 Orma R. Smith, Jr., Smith, Ross & Trapp, Corinth, Joseph C. Langston, Langston & Langston, Duncan Lott, Booneville, for appellant.
Thomas A. Wicker, Holland, Ray & Upchurch, Tupelo, Ralph E. Pogue, Aberdeen, Soper & Dent, Rhett R. Russell, Tupelo, Sharion Richardson, Fulton, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.

MORELAND III
SULLIVAN, Justice, for the Court:
Mittie Moreland petitioned the Lee County Chancery Court for a judgment declaring a legal services contract entered into by her and the law firm of Soper & Russell to be valid and enforceable as a lien upon any eventual proceeds recovered from the wrongful death of Mark Moreland. The Lee County Chancery Court granted the relief prayed for, ratifying and declaring the contract to be valid and enforceable. From that decision, Jane Riley has appealed to this Court, setting up the following issues:
1. Did the Chancery Court of Hinds County, Mississippi have exclusive jurisdiction to decide all issues as to attorney fees, if any, to be allowed the solicitors for an administratrix who was appointed and removed by that Court?
2. Does the Chancery Court of Lee County, Mississippi have jurisdiction of a declaratory judgment suit to determine attorney fees for representing in a wrongful death claim an administratrix appointed by the Chancery Court of Hinds County, Mississippi, if the jurisdiction depends upon the residence of a guardian, not a necessary nor proper party to the proceedings, whose ward is the sole beneficiary of that cause of action?
3. Is this a proper suit for a declaratory judgment action?
4. Did the Court err in reconsidering a matter that had already been decided and from which an appeal had not been taken? and
5. In the alternative, if the Chancery Court of Lee County could hear these issues, did the Court err in failing to limit the attorney fees to an amount determined on quantum meruit basis for a period ending with removal of the administratrix?
Approximately two weeks after Jane Riley filed her Motion for Injunction against Mittie Moreland in Hinds County Chancery Court, Mittie Moreland filed this action for declaratory judgment pursuant to Rule 57, Miss.R.Civ.P., in Lee County Chancery *1350 Court. Jane Riley is a resident of Lee County, and was appointed by the Lee County Chancery Court as guardian of the Estate of Stefan Nicholas Moreland.
Mittie Moreland requested that the Lee County Chancery Court enter a judgment declaring the legal services contract executed and entered into by her while she was duly acting as administratrix to be valid and enforceable as a lien upon any wrongful death proceeds arising out of the demise of Mark Moreland. Mittie Moreland was appointed on June 11, 1986, and the legal services contract with Soper & Russell was executed on June 12, 1986.
Jane filed a motion to dismiss or change venue on August 31, 1987. She claims venue is proper in Hinds County, the situs of the administration.[1] She also asserts that the legal services contract has already been invalidated by the Hinds County Chancery Court.
By memorandum opinion and order on February 10, 1988, the Lee County Chancery Court, Honorable Michael Malski Presiding, found that the Hinds County Chancery Court never specifically ruled on the validity of the contract, and that venue was proper in Lee County, since Mittie Moreland is claiming a lien on proceeds which will ultimately belong to the guardianship established in Lee County. Consequently, motion to dismiss or change venue was overruled, and a hearing set for February 16, 1988, to determine the merits of the lien.
After a hearing on the merits, the Lee County Chancery Court determined that the legal services contract entered into by Mittie Moreland and the Tupelo Law Firm of Soper & Russell is valid and binding. In the court's opinion, Jane Riley took the estate as she found it, subject to all actions taken by Mittie Moreland while she was the duly appointed administratrix.[2] The court thereby expressly ratified the contract, but refused to rule on the reasonableness of the contingent fee percentage or the amount and proportionment of fees ultimately due under the contract. Instead, it consolidated this action with the ongoing guardianship proceedings so that it could later determine the reasonableness of any settlement offers, and at which time it could also determine the reasonableness of attorneys fees under Rule 6.13, Uniform Chancery Court Rules.
The matter is now before this Court on Jane Riley's appeal from the February 10, 1988, memorandum opinion and order denying her motion to dismiss or change venue, and from the February 29, 1988, memorandum opinion and order determining the attorney fee contract between Mittie Moreland and the Tupelo Law Firm of Soper & Russell to be valid and enforceable.

DISCUSSION
Jane Riley does not question the lower court's holding that the legal services contract between Mittie Moreland and the law firm of Soper & Russell is valid. Instead, she raises questions concerning the lower court's assumption of jurisdiction, the appropriateness of a declaratory judgment action under these circumstances, issue and claim preclusion, and the extent of the lower court's ruling.

I.

WAS VENUE PROPER IN THE CHANCERY COURT OF LEE COUNTY, AND DID THAT COURT HAVE SUBJECT MATTER JURISDICTION?
Issues I and II raise essentially the same question. Jane Riley contends that venue and subject matter jurisdiction is vested in the Hinds County Chancery Court because that court reigns over the administration of the decedent's estate. According to Jane, the matter of determining the validity of the legal services contract entered into by Mittie Moreland while she was acting administratrix is a matter committed solely to the jurisdiction of the court that appointed *1351 and removed Mittie, and which authorized the execution of the contract. Jane also contends that this matter is about the extent and value of services rendered under the contract, and that as such, it is a claim for fees against the estate of the decedent, and jurisdiction and venue are therefore vested in Hinds County Chancery Court.
Mittie, on the other hand, views this as an action which touches and concerns the guardianship. Therefore, she concludes that venue and subject matter jurisdiction is vested in the Lee County Chancery Court, that court having reign over the guardianship of Nick Moreland.
Subject matter jurisdiction turns on the type of case at issue, and it is against this backdrop that we consider the arguments. Marx v. Truck Renting & Leasing Association, 520 So.2d 1333, 1338 (Miss. 1987). Jane's argument relies primarily on the principle that "jurisdiction of all demands by creditors or others against an estate of a decedent is vested in the chancery court of the county which letters of administration were granted." Trippe v. O'Cavanagh, 203 Miss. 537, 36 So.2d 166, 168 (1948). It cannot be disputed that this is the prevailing rule, but it is simply not applicable at bar. Instead, there is a controlling corollary rule which states that the "chancery court in which the guardianship is being administered shall draw to itself the decision and control of all litigation affecting the guardianship, ... between third persons (Mittie) and the guardian (Jane) ..." Id., quoting Newsom v. Federal Land Bank of New Orleans, 184 Miss. 318, 340, 185 So. 595, 602 (1939); see also, Mississippi Constitution of 1890, § 159; Mississippi Code Annotated, §§ 9-5-83, 11-5-1 (1972). Therefore, for reasons shown presently, venue and subject matter jurisdiction is proper in the Chancery Court of Lee County.
First, the declaratory judgment action filed by Mittie is not a "demand ... against an estate of a decedent ..." The complaint for declaratory judgment asks only whether the contract at issue is valid and enforceable. The complaint does not ask for a determination and award of fees under the contract. The determination of the amount of fees allowable thereunder is a separate question whose answer necessarily awaits the conclusion of ongoing litigation. Furthermore, a proper petition for allowance of fees out of a wrongful death recovery must be filed with the chancery court, and must show "the total amount recovered, the nature and extent of the service rendered, and expense incurred by the attorney, and the amount, if any, offered in compromise before the attorney was employed in the matter." Rule 6.13, Uniform Chancery Court Rules. A review of the record shows conclusively that no claim for fees was involved in the declaratory judgment action, and any such claim would be premature on the facts as they now stand. The chancellor obviously realized this when he expressly refused to determine the "reasonableness of the contingent fee percentages ...," or the amount and "proportionment of attorney fees arising out of the wrongful death action ..."
Second, even if we were to assume that the declaratory judgment action also amounts to a claim certain for fees, it would in reality be a claim against the estate of the ward and not against the estate of the decedent. The contract at issue, by its express terms, states that it authorizes Soper & Russell to prosecute an action for the wrongful death of the decedent. The fee portion of the contract, by its express terms, "assign[s]" to Soper & Russell "an undivided contingent interest in said claim in the following percentages ..." Further, looking as we must to the well pleaded allegations of the complaint which are accepted as true for jurisdictional purposes, the suit is for a judgment declaring the contract valid and "enforceable [as] a valid lien upon wrongful death proceeds arising out of the demise of Mark Stephen Moreland, Deceased." See Marx, supra.
The law in Mississippi is clear that the wrongful death cause of action accrued to the minor son of the deceased, and this cause of action and any eventual proceeds is an asset of his estate. Partyka v. Yazoo Development Corporation, 376 So.2d 646 *1352 (Miss. 1979); Byars v. Austin, 218 So.2d 11 (Miss. 1969). It is equally clear under Alabama law that the cause of action is not an asset of the decedent's estate. Board of Trustees of University of Alabama v. Harrell, 43 Ala.App. 258, 188 So.2d 555, 557 (1965), cert. denied, 279 Ala. 685, 188 So.2d 558 (1966). While only the personal representative alone may commence the wrongful death action in Alabama, the representative does so as a statutory trustee for the benefit of the designated beneficiaries, who are the real parties in interest. Id. A representative does not act strictly in her capacity as administrator of the estate of her decedent because she is not proceeding to reduce to possession the estate of her decedent; instead, she merely acts as a conduit to commence the action, collect the damages, and pass them over to those entitled thereto. Hatas v. Partin, 278 Ala. 65, 175 So.2d 759, 761 (1965).
Simply, an action for wrongful death in Alabama does not benefit the estate of the deceased, the decedent's estate is not interested in the result, and any damages recovered are not subject to administration. USF & G Co. v. Birmingham Oxygen Service, Inc., 290 Ala. 149, 274 So.2d 615, 621 (1973); Baggett v. Sellers, 282 Ala. 235, 210 So.2d 796, 799 (1968); Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77, 80 (1954). In the end, the sole beneficiary of the wrongful death action will be the surviving minor son of the decedent, whether the determination of beneficiary be controlled by Mississippi or Alabama law. Mississippi Code Annotated, § 11-7-13 (Supp. 1988); § 43-8-42, Alabama Code (1982); Blansit v. Cornelius & Rush Coal Co., 380 So.2d 859, 861 (Ala. 1980).
Consequently, again assuming this were a claim certain for fees arising under the contract, the claim would be against the estate of the ward and not against the estate of the decedent. The lower court assumed jurisdiction for this very reason, stating that Mittie Moreland seeks a lien on certain wrongful death proceeds ultimately flowing to the guardianship. Any eventual proceeds will flow to the guardianship as an asset of the ward's estate, and a lien will clearly impact on those proceeds.
Given, therefore, that the contract at issue relates solely to the wrongful death action, and consequently the guardianship, and that the Lee County Chancery Court is the proper court to authorize and approve any eventual payments to Soper & Russell under the contract, it is our opinion that venue and subject matter jurisdiction to determine the validity and enforceability of the contract was proper and exclusive in the Lee County Chancery Court, the situs of the guardianship. Trippe, supra; Mississippi Code Annotated, §§ 9-5-83, 11-5-1 (1972); Rule 6.13, Uniform Chancery Court Rules. The fact that the contract was entered into by Mittie in her capacity as administratrix does not ipso facto makes this a matter involving the estate of the decedent since both Alabama and Mississippi law make clear that the action is for the benefit of the sole beneficiary, and Mittie does not act strictly in her capacity as administratrix. Byars v. Austin, 218 So.2d at 14-15; Hatas v. Partin, supra.[3]

II.

IS THIS A PROPER CASE FOR DECLARATORY JUDGMENT?
Jane Riley's argument is simply that a declaratory judgment "could not possibly end all litigation" related to the contract, and the amount of fees allowable thereunder.
Mittie Moreland points out, on the other hand, that the declaratory judgment action finally settled the controversy and uncertainty which gave rise to the action; namely, whether or not the legal services' contract is valid. Without this declaration, it is argued, litigation of the wrongful death action, including attempts to settle or compromise the claim, would be hampered.
*1353 The sole issue involved in the declaratory judgment action is the validity vel non of the contract. The chancery court found that a declaratory judgment action was proper under the circumstances, and that the best interest of the minor and his guardianship estate would be served. As a result, the chancellor declared the legal services contract valid and binding. Not until final settlement would the court determine the amount and proportion of fees to be paid thereunder.
The language of Rule 57, Miss.R.Civ.P., and its Comment are instructive. The rule provides in relevant part:
RULE 57. DECLARATORY JUDGMENTS
(a) Procedure. Courts of record within their respective jurisdictions may declare rights, status, and other legal relations regardless of whether further relief is or could be claimed. The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding.
* * * * * *
The existence of another adequate remedy does not preclude a judgment for declaratory relief in actions where it is appropriate.
The court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar. The judgment in a declaratory relief action may be either affirmative or negative in form and effect.
(b) When Available.
* * * * * *
(3) Any person interested as or through an executor, administrator, trustee guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust, or of the estate of a decedent, an infant, insolvent, or person under a legal disability, may have a declaration of rights or legal relations in respect thereto:
(C) to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.
(4) The enumeration in subdivisions (1), (2) and (3) of this rule does not limit or restrict the exercise of the general powers stated in paragraph (a) in any proceeding where declaratory relief is sought in which a judgment will terminate the controversy or remove an uncertainty.
The Comment then provides that declaratory judgment actions are particularly useful solutions to questions concerning the validity and enforceability of contracts. More importantly, "[t]he granting of a declaratory judgment rests in the sound discretion of the trial court ..." The guiding criteria are that the judgment "serve a useful purpose in clarifying and settling the legal relations in issue," and that the judgment "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."
Stated otherwise, if Mittie Moreland has standing as an interested party, and one or more of the vital issues giving rise to the proceeding is shown to be susceptible of authoritative resolution, then the trial court generally ought to grant the declaratory judgment. See Johnson v. Hinds County, 524 So.2d 947, 954 (Miss. 1988); In re Validation of $7,800,000 Comb. Util. Sys., 465 So.2d 1003, 1004 (Miss. 1985). In our opinion, Mittie Moreland clearly has standing as an interested party, and the singular issue giving rise to the proceeding (the validity and enforceability of the contract) has been adequately shown to be susceptible of authoritative resolution. While there may be companion issues which still await determination, the existence of those issues in no way renders the use of declaratory judgment improper. In re Validation, supra.
Therefore, we hold that the chancellor acted well within his discretion by granting the declaratory judgment.

III.

DO PRINCIPLES OF RES JUDICATA OR COLLATERAL ESTOPPEL BAR *1354 THE LOWER COURT FROM CONSIDERING THE QUESTION OF CONTRACT VALIDITY?
Jane argues that the Hinds County Chancery Court, in Moreland I [Estate of Moreland, 537 So.2d 1337] determined, inter alia, that the contract at issue was void, and that no appeal was taken from this determination. Therefore, she argues that this determination is conclusive, and that the question of contract validity was improperly re-litigated by the Lee County Chancery Court.
Mittie argues that the Hinds County Chancery Court in Moreland I did not rule the contract void and even so, the elements of res judicata or collateral estoppel are not present.
Collateral estoppel is a subsidiary doctrine of res judicata, and it precludes the parties from "re-litigating a specific issue actually litigated, determined by, and essential to the judgment in a former action," even though the latter suit proceeds on the basis of a different cause of action. Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss. 1982). The doctrine applies only to questions actually litigated. Id. In the former action, the question of contract validity was not actually litigated, and certainly was not determined by or essential to the judgment. The only question actually litigated in the former action was whether Mittie Moreland should be removed as administratrix, and Jane Riley substituted in her place. Judgment vacating Mittie's prior appointment was entered accordingly. The Hinds County Chancellor did render findings of fact and conclusions of law on Mittie's motion for new trial. However, the chancellor refused to state as a matter of law whether the actions taken by Mittie before her removal were void or voidable. The chancellor stated that he could not "cover individually each one of the items, because they are not before the court." In short, there was never a specific question, finding, or conclusion regarding the validity of the contract at issue. Thus, the present action is not barred by the doctrine of collateral estoppel.
As pertains to the broader doctrine of res judicata, "the parties will be prevented from re-litigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit," provided of course that the four identities of res judicata are present. Id. They are:
(1) identity of the subject matter of the action;
(2) identity of the cause of action;
(3) identity of the parties to the cause of action; and
(4) identity of the quality or character of a person against whom the claim is made. Id.
In our view, there are not sufficient identities to invoke the doctrine. Drawing from the previous discussion of jurisdiction, the two causes of action involved are distinct. This distinction is based on the rule in this State "that a cause of action by the administrator of an estate for the assets of an estate, and a suit in the name of an administrator for the use and benefit of the ... persons named in the wrongful death statute are distinct causes of action and are unrelated although they grow out of the results of the wrongful death of the decedent." Byars v. Austin, 218 So.2d 11, 16 (Miss. 1969).
Therefore, the "underlying facts and circumstances upon which the [present] claim is asserted and relief sought" is the wrongful death suit, out of which this contract issue has arisen. Conversely, the "underlying facts and circumstances upon which the [former] claim is asserted and relief sought" is the administration of the decedent's estate. See Walton v. Bourgeois, 512 So.2d 698, 701 (Miss. 1987) (identity of cause of action is "identity of underlying facts and circumstances upon which a claim is asserted and relief sought from the two actions.") Stated otherwise, the claim of Mittie Moreland in the present case arises out of and is connected with the wrongful death action, and is separate and distinct from the claim in the former action which arose out of and was connected with the administration of the decedent's estate.
*1355 Therefore, we hold that the Lee County Chancery Court did not err in overruling Jane Riley's Motion to Dismiss on account of res judicata or collateral estoppel.

IV.

DID THE COURT ERR BY FAILING TO LIMIT THE AWARD OF FEES UNDER THE CONTRACT AT ISSUE TO AN AMOUNT IN QUANTUM MERUIT FOR THE PERIOD ENDING WITH MITTIE MORELAND'S REMOVAL?
It appears that this issue was not argued in the trial below, and Jane Riley urges it upon this Court in summary fashion without any citation to authority. The trial court peremptorily restricted the plaintiff from presenting any proof as to the value and extent of services under the contract; the court's sole concern was with the validity vel non of the contract. Counsel for Mittie Moreland confirmed that their proof would be so limited, acknowledging then that this issue was premature. Therefore, it cannot be disputed that this issue is not ripe for adjudication on appeal.
In any event, the determination of either the extent or amount of fees is premature at this time. As previously stated, such determination must await, inter alia, the conclusion of ongoing litigation, most notably the ultimate settlement, by trial or otherwise, of the wrongful death action. Accordingly, the trial court can make a reasonable assessment at such time as it has before it all the necessary information concerning the extent and value of services rendered under the contract.
In making that assessment, the chancellor should carefully scrutinize the application made pursuant to the contract at issue in order to determine the appropriate award. We can't help but notice in the combined records of these cases that the demise of Mark Moreland has spawned a procedural quagmire, and we harbor serious doubt about the reasonableness and necessity of some pleadings filed by Mittie Moreland. We simply emphasize here, that on application for fees under the Mittie Moreland contract, the chancery court should limit his award of fees to those expenses necessarily and reasonably incurred in pursuit of the wrongful death action, and limited to the time of Mittie Moreland's removal by the Chancery Court of Hinds County, Mississippi.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, ANDERSON and ZUCCARO, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] As will appear, infra, this claim is in reality an attack on the subject matter jurisdiction of the Lee County Chancery Court.
[2] The court is referring to actions taken by Mittie from June 11, 1986, the date of her appointment, until August 5, 1986, the date of her removal by Judge Barnett in Hinds County.
[3] Lest Jane return to Hinds County Chancery Court and try to assail that court's initial approval of the contract for the reasons set forth above, we here make clear that the Lee County Chancery Court expressly ratified the contract and the Hinds County Chancery Court's approval thereof. The Lee County Chancery Court now retains exclusive jurisdiction and authority to determine the amount ultimately due under the contract.