I. INTRODUCTION
E.B. McIntosh has appealed this case from the Chancery Court of Newton County, concerning an issue of estoppel in a property dispute with the Murray Church of God in Christ (Murray Church). The chancellor held a hearing on July 29, 1991. The chancellor entered a judgment on August 1, 1991. The judgment held that McIntosh was estopped from defending title as to property in dispute between McIntosh and Murray Church. The judgment dismissed Murray Church's causes of action against McIntosh for assault and trespass. The judgment also denied Murray Church's motion for attorney's fees.
McIntosh appealed the ruling to this Court, asserting the following error:
 1) DID THE CHANCELLOR COMMIT ERROR IN HOLDING THAT APPELLANT'S ACTION OR INACTION IN PRIOR CAUSE NUMBER 13,325 ESTOPPED APPELLANT FROM ASSERTING ANY CLAIM TO THE PROPERTY APPELLEE ALLEGED WAS CONVEYED TO IT IN THE AGREED JUDGMENT AND QUITCLAIM DEED WHICH CONCLUDED CAUSE NUMBER 13,325 OF THE NEWTON COUNTY CHANCERY COURT?
Murray Church cross-appealed the ruling to this Court, asserting the following errors:
 1) DID THE CHANCELLOR COMMIT ERROR IN FAILING TO ALLOW A CAUSE OF ACTION FOR TRESPASS OR ASSAULT?
 2) DID THE CHANCELLOR COMMIT ERROR IN FAILING TO AWARD ATTORNEY'S FEES AGAINST MCINTOSH, UNDER THE CIRCUMSTANCES OF THIS CASE?
 II. STATEMENT OF THE FACTS
This case began in an attempt to clear title by Murray Church against a Mr. Barfield. *Page 192 
Mr. Barfield had a house trailer on property alleged to be owned by Murray Church. Decatur Baptist Church (hereinafter Decatur Church), intervened, stating it owned the property to which Murray Church was attempting to clear title. McIntosh owned land abutting the disputed property.
McIntosh stated that he was chairman of the trustee board at Decatur Church at the time, and is still a trustee. McIntosh stated that he was a part of the Decatur Church that hired attorney Bill May in this case. May informed McIntosh of the suit's progress, and McIntosh would go to May's office for briefings.
Murray Church made an offer to settle the dispute. Murray Church offered to reimburse Decatur Church for its attorney's fees if Decatur Church would grant the disputed land to Murray Church. May discussed this settlement with McIntosh and others in Decatur Church.
At this settlement, McIntosh stated he became aware of Murray Church's desire to have Decatur Church grant more land than Decatur Church owned. Murray Church's proposed land agreement, as shown on its plat, included land granted to Murray Church by Decatur Church that other people owned. McIntosh stated that he withdrew from the proceedings at that point.
The suit between Murray Church and Decatur Church was settled on September 25, 1990. Decatur Church gave its interest in the disputed land to Murray Church in a quitclaim deed, using Murray Church's land description. McIntosh did not sign this deed. Decatur Church drew a certificate of trusteeship status for itself to "erase doubt" as to the composition of the trustee board. Decatur Church's attorney, Bill May, later testified that he told Murray Church's attorney during the settlement that this proposed settlement affected the relationship between the two parties only.
McIntosh stated that he learned Murray Church had a claim against his personal property abutting the formerly disputed area in December 1990. McIntosh admitted that he knew of Murray Church's land claims according to its plat description as early as August 1990, before the settlement.
In December, 1990, members of Murray Church gathered to clear off the property they believed was theirs. McIntosh, according to Murray, told them they had ten minutes to get off his property. Murray testified that McIntosh made no statements than telling them they had ten, then five minutes to get off his property. The chancellor denied claims of trespass and assault for this matter, and for any trespass arising from McIntosh's use of the disputed property.
Murray Church then asked for attorney's fees based on the allegedly egregious conduct of McIntosh in this matter. The chancellor denied this request.
Aggrieved as to the chancellor's finding of estoppel and the chancellor's division of real property in this matter, McIntosh appealed. Murray Church cross-appeals on the chancellor's dismissal of the causes of action for trespass and assault, as well as the chancellor's denial of attorney's fees.
 III. ANALYSIS 1) DID THE CHANCELLOR COMMIT ERROR IN HOLDING THAT APPELLANT'S ACTION OR INACTION IN PRIOR CAUSE NUMBER 13,325 ESTOPPED APPELLANT FROM ASSERTING ANY CLAIM TO THE PROPERTY APPELLEE ALLEGED WAS CONVEYED TO IT IN THE AGREED JUDGMENT AND QUITCLAIM DEED WHICH CONCLUDED CAUSE NUMBER 13,325 OF THE NEWTON COUNTY CHANCERY COURT?
There is much discussion in this case about the distinctions and meaning of res judicata and collateral estoppel. However, this Court notes confusion regarding the meaning and distinctions between collateral estoppel and res judicata. This Court has stated that res judicata precludes all claims that were or could have been brought in the underlying action. Bowe v. Bowe,557 So.2d 793, 794 (Miss. 1990); Defoe v. Great Southern Nat'lBank, 547 So.2d 786, 788 (Miss. 1989) This Court has also held that res judicata bars only questions "actually litigated and determined *Page 193 
by or essential to the judgment rendered in the former proceedings." Trammell v. State, 622 So.2d 1257, 1261 (Miss. 1993), citing Riley v. Moreland, 537 So.2d 1348, 1354 (Miss. 1989). Riley properly states that res judicata bars both claims that were made, or should have been made, in the prior suit.Riley, 537 So.2d at 1354. Trammel's statement attributing collateral estoppel language to res judicata is a misstatement in dicta.
This Court has labeled res judicata "a rule of claim preclusion." State ex rel. Moore v. Molpus, 578 So.2d 624, 640 (Miss. 1991). This Court also noted that collateral estoppel, on the other hand, was a "sister doctrine," of issue preclusion, also known as collateral estoppel. State ex rel. Moore, 578 So.2d at 640. The Court noted that collateral estoppel bars only those claims that actually were litigated in the prior suit.Id.
The identities required to establish collateral estoppel, as with res judicata, are:
 (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made.
Dunaway v. W.H. Hopper Assoc., 422 So.2d 749, 751 (Miss. 1982).
This Court set forth these same standards for collateral estoppel, by labeling collateral estoppel a "subsidiary doctrine" of res judicata. Dunaway, 422 So.2d at 751.
In this case, the chancellor concluded in this matter that only estoppel, and not res judicata, governed this case. As stated above, collateral estoppel only bars matters actually litigated in the prior litigation, as opposed to barring matters the estopped party should have brought. In the Interest of K.M.G.,500 So.2d 994, 996 (Miss. 1987).
However, res judicata would serve as such a bar. The problem that arises here is that the chancellor states that McIntosh should have brought this matter in the earlier proceeding, and is now estopped from raising it. Collateral estoppel, as stated above, would not bar this matter. Res judicata would serve as such a bar. Despite the chancellor's use of collateral estoppel, instead of res judicata, this Court will affirm such decisions where there are grounds to support such a ruling. Harris v.Shields, 568 So.2d 269, 272, n. 4 (Miss. 1990).
Furthermore, the identities of both doctrines are identical.Dunaway v. W.H. Hopper Assoc., 422 So.2d 749, 751 (Miss. 1982). As such, this Court can examine the fourprong test to determine the applicability of res judicata here.
The first requirement is identity of subject matter. Dunaway,
422 So.2d at 751. Both the underlying case, and this case, concern the ownership of property. In addition, appellant does not address this issue as an error. For those reasons, this requirement is satisfied.
The second requirement, identity of cause of action is satisfied. Both the underlying case, and this case, concerns the ownership of this particular disputed piece of property. McIntosh states that the dispute is different, because Murray Church's plat covers land not owned by Decatur Church. According to McIntosh, since the dispute was between the two parties, the additional land now in dispute is different than that involved in the underlying suit. However, the consent judgment resolving the underlying suit granted Murray Church the land currently in dispute, both then and now. The parties reached a resolution through a consent judgment. Consent judgments receive the same force as regular judgments, in binding parties under collateral estoppel and res judicata. Guthrie v. Guthrie, 233 Miss. 550, 556-57, 102 So.2d 381, 383 (1958).
However, the third requirement, as to the identity of parties, is not satisfied. Both parties state that at best, McIntosh was only a party in privity to a party in the earlier litigation. McIntosh was not a named party in the prior suit.
Murray Church is correct in stating that persons in privity with a party in the prior suit are similarly barred under collateral estoppel and res judicata. Walton v. Bourgeois,512 So.2d 698, 701 (Miss. 1987). Murray Church cites Restatement (Second) *Page 194 
Judgments § 41 (1982) to show trustees have privity to their charges, so that res judicata and collateral estoppel applies against them.
However, this argument has a problem. Restatement (Second) Judgments § 41 deals with estopping persons represented by a party. McIntosh was never represented by Decatur Baptist. If anything, McIntosh represented Decatur Baptist. Restatement (Second) Judgments § 36 (1982) is the closer analogy.
Restatement (Second) Judgments § 36 (1982) states that trustees or persons appearing in a representative capacity are not barred by res judicata or collateral estoppel from bringing suits in an individual capacity in later litigation. The Fifth Circuit has followed this principle, holding res judicata inapplicable when the party appears in one action in an individual capacity, and a second action as a representative of another. Clark v. AmocoProduction Co., 794 F.2d 967, 973 (5th Cir. 1986). As this Court has labeled collateral estoppel a "subsidiary doctrine" of res judicata, Restatement § 36 should apply to collateral estoppel as well. State ex rel. Moore, 578 So.2d at 640.
Therefore, even assuming McIntosh was an active trustee at the time of the agreement between Decatur Church and Murray Church, which is contested, collateral estoppel would not bar McIntosh from bringing a suit in an individual capacity. The case must be reversed and remanded for a trial on the merits of the underlying property dispute.
 2) DID THE CHANCELLOR COMMIT ERROR IN FAILING TO ALLOW A CAUSE OF ACTION FOR TRESPASS OR ASSAULT?
The general standard of review in such cases is to reverse a chancellor's findings only where his decision is manifestly wrong or not supported by "substantial, credible evidence." Snow LakeShores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss. 1992). This Court presumes with no specific findings on the record, the chancellor resolved all such fact issues in favor of appellee. See, e.g., In re Estate of Mason, 616 So.2d 322, 329 (Miss. 1993).
In this case, the chancellor found no action for trespass or assault. This decision is amply supported by the evidence. As for the incident giving rise to the assault cause, McIntosh merely stood by his car, on the road, and told the workers from Murray Church that they had ten, and then five minutes to get off his property. A witness alleging assault stated that McIntosh did not make his statement in a manner "like he was going to jump on us." However, McIntosh did frighten them, according to the witness.
Mississippi law gives a definition of civil liability for assault in Webb v. Jackson, 583 So.2d 946 (Miss. 1991). Webb
states that liability for assault arises when a person "acts intending to cause a harmful or offensive contact with the person of another or a third person, or an imminent apprehension of such a contact, and the other is thereby put in such imminent apprehension." Webb, 583 So.2d at 951, citing Restatement (Second) of Torts § 21 (1965).
In this case, the witness' testimony indicates that McIntosh was not indicating imminent contact, where the witness noted that McIntosh did not act as if he was going to attack them at all, let alone imminently. The chancellor was amply justified in refusing to allow assault.
Murray Church also argues that McIntosh should be liable for punitive damages on trespass, since he occupied ground he knew had been deeded to Murray Church. To receive punitive damages for trespass upon real property, Mississippi law requires the trespass to be willful or wanton. Seismic Petroleum Serv., Inc.v. Ryan, 450 So.2d 437, 440-41 (Miss. 1984). Murray Church cannot expect McIntosh, who was unrepresented by legal counsel, to know about the nuances of estoppel, to which reasonable people can differ.
 3) DID THE CHANCELLOR COMMIT ERROR IN FAILING TO AWARD ATTORNEY'S FEES AGAINST MCINTOSH, UNDER THE CIRCUMSTANCES OF THIS CASE?
Mississippi law states that "(a) attorney's fees may not be awarded as damages unless punitive damages are also proper." *Page 195 Greenlee v. Mitchell, 607 So.2d 97, 108 (Miss. 1992). In this case, the chancellor properly found that McIntosh did not act willfully or wantonly. The chancellor properly found that punitive damages against McIntosh were unjustified. Under Mississippi law, an award of attorney's fees against McIntosh would be unjustified as well.
 IV. CONCLUSION
McIntosh, at best, was involved in a representative capacity in the first litigation, and in a personal capacity in the second litigation. As a result, res judicata and collateral estoppel cannot apply against him in this case. Clark v. Amoco ProductionCo., 794 F.2d 967, 973 (5th Cir. 1986). This part of the case must be reversed and remanded for the merits of the underlying property dispute.
The chancellor was correct in refusing to award punitive damages or attorney's fees against McIntosh. McIntosh failed to demonstrate the necessary willful or wanton conduct required to justify either punitive damages or attorney's fees. Greenlee v.Mitchell, 607 So.2d 97, 108 (Miss. 1992).
DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART. CROSS-APPEAL: JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.